DAVIS, Chief Judge.
Thomas Coddington and his wife, Gwyn-neth Coddington, were involved in an automobile accident in which their vehicle struck a vehicle driven by Jaime Nunez. Mr. Nunez sued the Coddingtons as owners of the vehicle that Mr. Coddington was driving, alleging that Mr. Coddington’s *446 negligence caused the accident and the resulting injuries that Mr. Nunez sustained. The jury returned a verdict that found that the total damages sustained was $600,000 but that Mr. Nunez was twenty-five percent liable for his injuries. Based on this verdict and the award of costs, the trial court entered a final judgment in the amount of $488,500 in favor of Mr. Nunez. It is this final judgment that the Coddingtons now challenge. Because the trial court erred by precluding certain testimony by the Coddingtons’ expert witness, we reverse the final judgment and remand for a new trial.
The Coddingtons were traveling north on 21st Street in St. Petersburg, Florida. Mr. Coddington stopped his vehicle at the stop sign at the intersection of 21st Street and 30th Avenue North. As he proceeded to turn left on 30th Avenue, his vehicle struck the vehicle driven by Mr. Nunez as it approached from Mr. Coddington’s left. This impact caused Mr. Nunez’s vehicle to spin around and strike a nearby palm tree before coming to a final stop. As a result of the accident, Mr. Nunez was thrown from his vehicle and suffered serious physical injuries.[1]
Mr. Nunez alleged below that Mr. Cod-dington caused the accident by entering his lane of traffic as he was approaching. The Coddingtons raised two defenses. First, they argued that the cause of the accident was Mr. Nunez traveling at a speed that exceeded the posted thirty-five-mile per hour speed limit. They supported this argument by pointing to the fact that when Mr. Coddington stopped his vehicle at the stop sign he looked for oncoming traffic and saw none. The Cod-dingtons further relied on the physical damage that resulted from the crash, the final resting position of the vehicles, and the other physical evidence. The Codding-tons also argued that Mr. Nunez failed to wear his seat belt and that this failure contributed to his injuries.
As part of their defense, the Codding-tons sought to introduce the opinion testimony of their expert, James Wheeler, regarding speed, as well as the direction of movement of the driver’s body within the vehicle. Mr. Wheeler had conducted an accident reconstruction analysis by using a computer program developed by the United States government. He testified below that the computer program was based on the simple laws of physics. He entered the weights of the vehicles and the distances the vehicles traveled after impact, and the computer program determined the vehicle speeds at the time of impact. The program also produced a video simulation based on the data entered, and the Cod-dingtons sought to introduce the video simulation as well. Based on Mr. Wheeler’s use of the computer simulation program, he was prepared to testify that, in his opinion, Mr. Nunez was traveling fifty-seven miles per hour at the moment of impact.
Mr. Nunez moved in limine to exclude both Mr. Wheeler’s opinion testimony and the video simulation as scientifically unreliable. Mr. Nunez’s opposition to the opinion testimony was based on two arguments. First, he argued that the cars depicted in the video were not those involved in the accident, pointing out that the simulation depicted a Chevrolet Cáma-ro instead of a Mazda RX-7 — the actual model driven by Mr. Nunez — and a Chevrolet Tracker instead of the Isuzu Rodeo— *447 the model driven by Mr. Coddington. Mr. Nunez also argued that it was unclear whether the development of these computer programs involved the use of accidents with the same features as the instant accident — the striking of a vehicle in the side and the later striking of a tree by the same vehicle.
With regard to whether Mr. Nunez was using his seat belt at the time of the accident, Mr. Nunez’s expert was prepared to provide an explanation that Mr. Nunez could have been secured in his seat belt but that the accident caused him to be thrust into the console resulting in the disengagement of the seat belt. Mr. Wheeler was asked to review this theory. At the hearing on Mr. Nunez’s motion in limine, Mr. Wheeler testified that in his opinion the force of the crash would have thrust Mr. Nunez away from the console instead of toward it, as Mr. Nunez’s expert had put forth. Mr. Wheeler’s opinion was based on his entering Mr. Nunez’s height and weight into the computer simulation program as the description of the person in the driver’s seat and ascertaining the direction of the driver’s movement during the accident.
Mr. Nunez argued below that Mr. Wheeler’s simulation was being presented to prove that Mr. Nunez was ejected from the car and that such evidence was improper because whether or not he was ejected was an issue of fact to be determined by the jury.[2] Mr. Nunez also argued that the differences between the models of the vehicles used in the simulation as compared to the accident introduced interior design differences that would impact whether a person was ejected during the accident.
Following the pretrial hearing, the trial court excluded the video simulation and prohibited Mr. Wheeler from giving any opinion testimony as to the speed of Mr. Nunez’s vehicle and the theory that Mr. Nunez’s seat belt disengaged during the accident. The trial court based its ruling on three premises. First, the trial court determined that the prejudice of showing the video simulation outweighed the probative value of the evidence. Second, the trial court ruled that the methods and procedures used by Mr. Wheeler were not generally accepted in the engineering community. Finally, the court ruled that those methods would more probably than not lead to an unreliable result and that as such any opinion based on the video simulation — or the computer’s work in generating the video simulation — would be excluded as unreliable. However, Mr. Wheeler would be permitted to offer opinion testimony not based on the results of the computer simulation.
We first address the trial court’s conclusions regarding the admissibility of the video simulation itself. Section 90.403, Florida Statutes (2011), provides that “[rjelevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence.” And “[a] trial court’s ruling on a section 90.403 issue will be upheld on appeal absent an abuse of discretion.” Ramirez v. State, 810 So.2d 836, 843 (Fla. 2001).
Here, in determining that the video simulation’s probative value was substantially outweighed by the possibility of unfair prejudice, the trial court concluded “that the results depicted in the simulation might be right, but the jury is likely to place undue and extraordinary emphasis *448 on the simulation” because “it could very well lead the jury to defer to the opinion of the expert.” This ruling does not amount to an abuse of discretion. See McCray v. State, 71 So.3d 848, 862 (Fla.2011) (“[A] trial court’s decision does not constitute an abuse of discretion unless no reasonable person would take the view adopted by the trial court.”) (quoting Peede v. State, 955 So.2d 480, 489 (Fla.2007) (internal quotation marks omitted)).
Because we conclude that the trial court properly excluded the video simulation pursuant to section 90.403, we need not address the court’s ruling that the expert’s methods used in creating the video simulation are not generally accepted in the engineering community. See Ramirez, 810 So.2d at 842 (“All evidence ... is subject to the requirements of section! ] ... 90.403.”).
However, we must reverse the trial court’s ruling excluding Mr. Wheeler’s opinion testimony as to the speed of the vehicle and the movement of Mr. Nunez’s body inside the vehicle during the accident. See Gen. Motors Corp. v. McGee, 837 So.2d 1010, 1038 (Fla. 4th DCA 2002) (“Even assuming that the video of the crash test was inadmissible in evidence, [the expert] still could have relied on the test to give his opinion .... ”); see also § 90.704 (“The facts or data upon which an expert bases an opinion or inference may be those perceived by, or made known to, the expert at or before the trial.”).
All of the opinions excluded by the trial court were formed using scientifically accepted calculations involving the weight of the vehicles and the distance they traveled under the particular facts of this accident. Mr. Nunez’s argument that the calculations are unreliable because different vehicles are depicted in the video than were involved in the actual crash is without merit. Such differences were purely visual and did not impact the validity of the simulation calculations. The calculations were based on the input of the weights and measurements of the actual cars involved in the accident. And Mr. Wheeler testified below that these types of computer simulation programs had been used for all kinds of accidents to determine speed and that the particular features of this accident did not render the conclusions invalid.[3] While Mr. Nunez pointed out possible discrepancies with the particular application of this simulation to the accident, these arguments at best go to the weight of the evidence rather than to its admissibility. See Gen. Motors Corp., 837 So.2d at 1039.
Finally, with regard to the issue of whether Mr. Nunez was ejected from his vehicle, Mr. Wheeler’s opinion that Mr. Nunez would have been thrust away from the console merely would have rebutted Mr. Nunez’s assertion that he was wearing his seat belt and that it somehow became disengaged when he was thrust into the console. Mr. Wheeler testified that his opinion in this regard was based on the laws of physics and not the interior design of the automobile.
In conclusion, excluding the opinion testimony of the Coddingtons’ expert which was based on the simulation calculations was error. We therefore reverse and remand for a new trial. We note that the issues related to damages as raised by the *449 Coddingtons are mooted by this reversal, and we do not further address them.
Reversed and remanded.
KELLY and LaROSE, JJ„ Concur.

. Mr. Coddington testified that after the accident, the first thing he saw was Mr. Nunez lying on the ground in front of his car. Likewise, Dr. Zak, a treating physician called by Mr. Nunez, indicated that as a part of his medical history Mr. Nunez advised that he was ejected from the car.

. As previously noted, evidence was presented below that Mr. Nunez admitted to his treating physician that he was ejected from the vehicle following the accident.

. Mr. Nunez also argues that the video simulation did not show the vehicles in the exact location as was indicated in the investigating officer's report. But Mr. Wheeler testified that the purpose of the video was not to reproduce the accident exactly but to derive speed and physical force calculations based on the simulated car coming to rest in the same area and traveling the same distance as the actual car.